# RICHARDS *vs.* EDICK.

A demurrer to a complaint, founded on the sixth subdivision of section 144 of the code, applies only to such defects as would render the complaint bad on a general demurrer at law, or bad for want of equity, in chancery.

The complaint, to be overthrown by the demurrer, must present defects so substantial in their nature, and so fatal in their character, as to authorize the court to say, taking all the facts to be admitted, that they furnish no cause of action whatever.

A complaint set forth, in the first count, a written agreement between the parties, *in hæc verba,* by which the plaintiff agreed to sell to the defendant his farm in F. for the consideration of $1700 in cash and 240 acres of land owned by the defendant in the town of A., in L. county, Illinois, upon certain terms and with certain reservations therein stated. The agreement commenced thus: "Articles of agreement, made on, &c. between B. R. of, &c. and J. C. E. of, &c." Each party bound himself to a performance, by a forfeiture of $500, to be paid by the party who should *fail to fulfill his contract.* The plaintiff averred that on the day named in the agreement he tendered to the defendant a deed of his said farm, and demanded the payment of the $1700 in money and a conveyance of the land in Illinois; and that the defendant neglected to comply. He stated the value of the Illinois land to be $2000, and claimed that he was entitled to recover the consideration agreed by the contract to be paid. The second count set forth the same facts; and asked for a specific performance. *Held,* on demurrer,

1. That although there was no express contract or promise of the defendant to purchase, or to pay for, the plaintiff's farm, there was a clear *implication* of one; the instrument being an agreement *inter partes;* and signed by both. That it was not merely a *promise* made by one party to the other, but an *agreement* made by *both,* and binding on *both.*

2. That the measure of damages was the purchase price agreed to be paid by the defendant.

3. That the forfeiture of $500 was not intended as *damages* liquidated by

Richards *v.* Edick.

agreement of the parties to be paid in lieu of performance, but as a *penalty* to enforce the execution of the agreement; and that it formed no bar to the action.

4. That the contract was sufficiently certain, and definite, to become the foundation of a decree for a specific performance.

The word *agreement* necessarily imports two parties; and when one party *agrees* to sell his farm to another, for a stipulated price, and both parties sign the agreement, there is a promise by the purchaser to purchase the farm, and pay, for it, the consideration specified, as clearly implied as though it were expressed in words.

In the case of an agreement for the sale and purchase of land, the title does not *pass* by a tender of a deed; nor does it pass by operation of law, on the recovery of a judgment for the purchase price. The plaintiff holds the *title to the land*, and *recovers* its full value expressed in the contract; and after judgment, when the defendant seeks to obtain the land, a court of law is without the power of affording him any relief. *Per* GRIDLEY, J.

On an agreement relating to real estate, the vendor, on tendering a deed and offering to perform his agreement, may recover the purchase money, in an action at law.

Where lands agreed to be conveyed are not definitely described in the contract, but are alleged to lie in the town of A., county of L. and state of Illinois, and they are the 240 acres owned by the party, this is a sufficient description.

Such a description would be good either in a deed or a will.

A complaint in an action upon a contract for the sale and purchase of land, need not supply the circumstances which will furnish materials and guidance for drawing a decree or judgment directing a conveyance, with a definite description, so that an officer may go upon the ground and select the farm. Such a degree of certainty is not necessary.

If a demurrer admits facts enough to constitute a cause of action, that is sufficient to sustain the complaint. If the defendant requires a greater degree of certainty in the complaint, he must seek his relief by the mode pointed out in the code, by a motion that the pleading be made more certain and definite.

DEMURRER to the first and second counts of the complaint. The opinion states all the material facts and questions.

*F. Kernan,* for the plaintiff.

*M. H. Throop,* for the defendant.

GRIDLEY, J. This is a demurrer, separately taken to the two first counts of the complaint, upon several grounds, all of

which may be classed under the sixth subdivision of section 144 of the code. Although these grounds of objection are stated as special causes of demurrer, yet, unless they are such as show that the counts respectively do not contain facts enough to constitute a cause of action, they cannot be regarded, on this argument. Defects merely formal, and which, under the former practice, were the appropriate subjects of a special demurrer, cannot now be reached and corrected by this form of proceeding. The statute has defined the office of a demurrer ; and confined it, as a general rule, to objections which fall within some one of the six grounds specified in section 144. A demurrer founded on the sixth subdivision of that section, as this is, applies only to such defects as would render the count bad on a general demurrer at law ; or bad for want of equity, in chancery. I have had occasion to express my views on this subject, in the case of *Dewitt* v. *Swift,* (3 *How. Pr. Rep.* 280.) The counts of the complaint, therefore, to be overthrown by the demurrer, must present defects so substantial in their nature, and so fatal in their character, as to authorize the court to say, taking all the facts to be admitted, that they furnish no cause of action whatever.

The first count of the complaint sets forth an *agreement between the parties in hæc verba,* by which the plaintiff *agrees* to sell to the defendant his farm in Florence, Oneida county, for the consideration of $1700 in cash and two hundred and forty acres of land, owned by the defendant, in the town of Abington, Lake county, in the state of Illinois, upon certain terms, and with certain reservations stated in the instrument. The plaintiff then avers that on the day named in the agreement he tendered to the defendant a deed of his said farm, and demanded the payment of the $1700 in money and a conveyance of the lot of land in the state of Illinois ; and that the defendant neglected to pay the one, or deliver the other. He also avers that he is still ready to perform on his own part. He states the value of the Illinois land to be $2000, and alleges that he is advised that he is entitled to recover the consideration or purchase price agreed by the contract to be paid. The second count sets out the same facts, and asks for a specific perform-

Richards *v.* Edick.

ance. The third and fourth counts (not demurred to) seek to recover, the third, the actual damage of the plaintiff, sustained in making preparations and arrangements to leave his farm, &c.; and the fourth, a sum claimed as *liquidated damages*, and close by demanding in the alternative the several kinds of relief mentioned at the termination of each count as that which he is advised he is entitled to receive, and to which the count is specially adapted.

I. The first objection to the first count in the complaint is founded on the allegation that the agreement contains no promise or engagement of the defendant to purchase, or to pay for, the plaintiff's farm. It is true that there is no *express contract* to that effect found in the agreement; but in my opinion there is a clear *implication* of one. The contract commences in the following manner. "Articles of agreement made on, &c. between Benjamin Richards of Florence, &c. and James C. Edick of Marcy, &c. The aforesaid party of the first part agrees to sell his farm in Florence, &c. to the party of the second part, *for and in consideration* of seventeen hundred dollars, and two hundred and forty acres of land in the town of Abington, &c. owned by said Edick," &c. &c. Now this is an agreement *inter partes,* and is signed by *both.* The word *agreement* necessarily imports *two parties,* one to *sell* and one to *buy;* and when Richards *agrees* to sell his farm to Edick for $1700 and 240 acres of land owned by Edick in the state of Illinois, and Edick signs the agreement, there is a promise to purchase and pay, for the farm, the consideration expressed, as clearly implied as though it were expressed in words. It was not merely a *promise* made by one party to the other, but it was an *agreement* made by *both* and binding on *both* by every principle of law and morality applicable to the construction of contracts. This doctrine is fully stated, and enforced by numerous authorities, in *Barton* v. *McLean et al.,* (5 *Hill,* 256.) If, however, there were any doubt on this point it will be dissipated by the last clause of the agreement, in which each party expressly recognizes the existence and obligation of a contract upon himself, and binds himself to a performance, by a forfeiture of $500,

to be paid by the party who shall *fail to fulfill his contract.* It would be absurd to suppose that the defendant would agree to pay $500 for the non-performance of an *agreement which he had never made,* and which he was under no obligation to keep. This provision, therefore, amounts to an *express admission* of the existence and binding force of the contract which the argument of the defendant denies.

II. Again, it is insisted by the counsel of the defendant, that the *measure of damages* assumed in the first count, viz. the purchase price of the land, is not the true one. He argues that the title to the land does not *pass* by the tender of a deed to the defendant, and the plaintiff's continued readiness to deliver it; and that the true measure of damages is the excess of the contract price over the actual value of the land; and that inasmuch as there is no averment of such excess of the purchase price, and no other damage claimed, the $100, part of the $1700 which the plaintiff admits to have been paid, more than balances the nominal damages arising on the breach of the contract by the defendant. The counsel is certainly sustained in his position, as to the true measure of damages, by the decision of the court in *Laird* v. *Pierce,* (7 *Mee. & Wels.* 474.) It also seems to me, that were it a new question in this state, there would be great reason for adopting the principle which is now held to be law in the English courts. Because, what is sought to be recovered is *damages* for the violation of the defendant's contract, by which the plaintiff has suffered loss. But in the case of an agreement for land, the title does not *pass* by a tender of the deed; nor does it *pass* by operation of law on the recovery of a judgment for the purchase price, as is sometimes true of personal property. It is a case, therefore, where the plaintiff holds the *title to the land,* and *recovers* its full value expressed in the contract; and after judgment, when the defendant seeks to obtain the land, a court of law is without the power of affording him any relief. It is true, a court of equity may order a conveyance; but in the mean time some third person may have recovered a judgment against the plaintiff, and rendered his deed worthless. The English rule would, therefore,

Richards *v.* Edick.

seem to be more in accordance with general principles, and more in analogy to the action for not accepting personal property, as wheat, or other commodity which the defendant has purchased and contracted to receive and pay for. There is no necessity for the exercise of this jurisdiction, for the court of chancery is competent to order a specific performance of the agreement, and at the same time, to see that a valid deed, conveying the title, is delivered, on the payment of the contract price. The rule, however, is too well settled, and has been too long established, in this state, that on an agreement relating to real estate, on tendering a deed and offering to perform his agreement, the vender may recover the purchase money in an action at law. The principle is either decided or assumed as true, in the following cases : *Franchot* v. *Leach*, (5 *Cowen*, 506 ;) *Baldwin* v. *Munn*, (2 *Wend.* 399 ;) 2 *John.* 207 ; 10 *Id.* 266 ; 20 *Id.* 130, 15, 30 ; 11 *Wend.* 48 ; 21 *Id.* 636, 457 ; and in several other cases which I have examined. It is also so laid down in *Sugden on Vendors*, and was assumed as law in *Goodwin* v. *Munn*, (4 *T. R.* 781,) and in *Glazebrook* v. *Woodard*, (5 *T. Rep.* 366,) and was expressly so held, after a full discussion on the very point, by the superior court in the city of New-York, in the case of *Williams* v. *Field*, as appears from a note to page 198 of *Sedgwick on Damages.* A rule which has been adopted and followed by all the courts of this state, for more than forty years, as a rule of property, ought not to be disturbed after such a length of time ; especially by any tribunal below that of the last resort. It is argued that no recovery can be had of the value of the 240 acres of land, under this rule. It is not necessary to say whether that is so or not; for there remain $1600 due in money, and that is sufficient to uphold the count; for it is a question, not as to the whole *amount* of damages, but whether any amount is due, however small.

III. Another objection is founded on the fact, that the concluding clause in the agreement provides for the forfeiture of $500 ; which, it is maintained, being liquidated by the parties, supersedes all others, and especially the consideration money, which alone is counted on in the first count of the complaint.

The clause in question reads as follows, with such explanations interpolated as are necessary to render the words intelligible: " And (if) in consequence of a failure to fulfill (in fulfilling) the contract, and give (giving) title clear of incumbrances on or before the first day of April next, (it is agreed) to forfeit the sum of five hundred dollars, to be paid by the defaulting party, unless occasioned by some cause beyond their control." The question is, whether this forfeiture was intended by the parties as a penalty to enforce the agreement, or whether it was intended as *damages* liquidated by agreement of the parties, to be paid in lieu of its performance. The defendant insists it was the latter, and has cited many cases on the subject, which do, indeed, show that some of the authorities are scarcely reconcilable with each other. I shall not attempt to reconcile them, nor to state the grounds on which each case was decided. Whether the sum forfeited by the agreement, on its violation by one of the parties, is to be construed as liquidated damages, or only as a penalty, will depend on the intent of the parties, to be collected from the entire agreement and the attending circumstances, upon a fair interpretation of the instrument. And this intent will not be *conclusively* determined by the use of the words "penalty," "forfeiture," or "liquidated damages," *if the instrument discloses on the whole a different intent.* (*See* 2 *Story's Eq.* § 1318. *Davies* v. *Penton*, 6 *B. & C.* 216. *Kemble* v. *Farren*, 6 *Bing.* 141.) When the sum in question, in any case, is determined to be a *penalty*, it, for any good cause, may be remitted, or enforced on some other condition, by the court of chancery ; and therefore, the courts are strongly inclined to hold a sum that is thus stipulated to be paid, to be a penalty, rather than stipulated damages, over which no such jurisdiction can be exercised. And therefore, the burden of proof that the parties intended the sum as stipulated damages, is on him who maintains that side of the question ; and he must establish it to the satisfaction of the court. (*Taylor* v. *Sandiford*, 7 *Wheat.* 17.) Mr. Greenleaf has, in his treatise upon evidence, laid down in section 258, vol. 2, several rules for determining when the sum mentioned will be regarded as a *penalty*, rather than as *stipu-*

Richards *v.* Edick.

*lated damages.* One of these rules designates the case in which the parties have by the "agreement expressly declared the sum to be intended as a *forfeiture* or a *penalty, and no other or different intent is to be collected from the agreement.*" Another rule embraces the case in which the *damages are capable of being certainly known and estimated;* and this, even where the parties have declared the same to be stipulated damages." Now, tested by either of these rules, the sum in question, in this case, must be held to be a penalty; for the parties have expressly declared that the $500 should be "*forfeited,*" a word peculiarly descriptive of a *penalty ;* and there is no different intent to be collected from the instrument. So, too, the damages are capable of being certainly *known* and *estimated.* They consist in $1700 in cash, and the value of the 240 acres of land in Illinois, which is ascertained by the judgment of witnesses, and is not indefinite and at large, as on a promise to marry. Debt is said to lie to recover a *sum certain ;* and yet, either debt or *indebitatus assumpsit* lies on a *quantum meruit* for labor, or on a *quantum valebant* for goods and merchandise. (1 *Chit. Pl.* 101, 102, *Dunlap's ed. of* 1829, *article Debt. See also* 1 *Selw. N. P.* 402.) Mr. Chitty has also precedents for land sold, in the action of debt. In truth, that is certain which can be made certain ; and on this point there seems to be no reasonable doubt. Again, in section 259, Mr. Greenleaf states two classes of cases which have been held to fall under the rule prescribed for stipulated damages. The *first* applies to those cases in which "the damages are *uncertain* and *not capable of being ascertained* by any satisfactory and known rules ; as where the action is for damages for the violation of a promise to marry ; for running a stage on a road in violation of a contract ; for violating a promise not to trade or practice in certain places," &c. The case under consideration certainly bears no analogy to any of those enumerated by Mr. Greenleaf; but on the contrary the damages are not uncertain, and are capable of being ascertained by well known rules of the most satisfactory character. We have already seen that they consist of the $1700, and the value of the 240 acres of land, the value

of which is capable of being ascertained like that of any article of sale or commerce. The second rule embraces that class of cases in which "it is apparent that the damages have been the subject of *actual and fair calculation and adjustment between the parties.*" In this case it is not only *not apparent*; but there is not the slightest probability that the parties had gone into an actual calculation of the damages to be sustained by a breach of the agreement, and had *adjusted* them at the sum of five hundred dollars. And besides, if they had thus adjusted the actual damages, they would not have made the payment of them to depend on a voluntary and intentional non-performance of the contract. Were those authorities less conclusive than they appear to be, there is another consideration that is decisive of the question. It is laid down as a cardinal principle, that, "in all cases where a party relies on the payment of liquidated damages as a *discharge*, it must clearly appear from the contract that they were to be paid and received absolutely *in lieu of performance.*" (*Sedgwick on Damages*, 437. *Hasbrouck* v. *Tappen;* 15 *John.* 200. *Slosson* v. *Beadle*, 7 *Id.* 72.) So, too, the chancellor, in *Shiell* v. *McNitt*, (9 *Paige*, 101,) says, that to constitute a sum agreed on as stipulated damages, it must be the intention to make it a *satisfaction* for the non-performance. Now, the fact that the parties provided that the $500 should be forfeited, unless the non-performance was occasioned by circumstances beyond the control of the parties, is decisive against its being considered either a *satisfaction*, or to have been designed as a *compensation* in *lieu of performance*. The damages would be just the same, whether the non-performance was occasioned by causes beyond the control of the parties, or not; and yet they were not to be paid in that event. And on the hypothesis that this $500 is stipulated damages, there is no compensation, nor satisfaction for the damages occasioned by an involuntary and unintentional breach. That is, the damages that were agreed on and stipulated, after all, are dependent on a contingency provided for in the agreement. This involves an absurdity too great to be tolerated. On the contrary, the forfeiture was manifestly a penalty to enforce the performance of the con-

Richards .v. Edick.

tract; and was to be remitted when, for any cause, the party could not perform it. Being a penalty, it forms no bar to. this action.

IV. Several of the objections to the first count of the complaint which have been already considered and disposed of, are also made to the second count. The same answers apply in both cases, and need not be repeated. · It is however insisted that the contract is too uncertain and indefinite to become the foundation of a decree for specific performance. It is indeed true that the 240 acres are not definitely described, in the contract. They are said, however, to lie in the town of Abington, Lake county, and state of Illinois ; and they are the 240 acres owned by the defendant. This is a sufficient description to be good either as a deed or a will. In the case of *Fish* v. *Hubbard's Adm'rs*, (21 *Wend.* 652,) an action was brought on a sealed agreement by which Hubbard, in his lifetime, agreed for an adequate consideration, to furnish the plaintiff " water out of the mill-dam, sufficient to carry the fulling mill and carding machine at all times," &c. without any other description to indicate the · town, county or other locality where the premises were situated. Judge Cowen, giving the opinion of the court, held the description good and the premises capable of being located by parol evidence, without a violation of the principle that prohibits the alteration of a written contract by verbal testimony. He observes, that such a description would be good in a will or a deed; on the principle that a construction should be adopted "*ut res magis valeat quam pereat*." Where a party conveys his real estate by will or deed, describing it as "*all my real estate*," without any other description, the instrument is good and operative, and evidence will be admitted to locate the premises. (*Turner's Ch. Rep.* 104. *Wigram on Extr. Ev.* 30. *Standen* v. *Standen*, 2 *Ves. jun.* 589. *Napier* v. *Napier*, 1 *Sim. R.* 28.) These authorities are conclusive that the instrument is valid. But it is further objected to the second count that it is defectively drawn ; and that it ought to have supplied the circumstances which would furnish materials and guidance for drawing a decree or judgment directing a conveyance, with a

definite description, so that an officer might go upon the ground and select the farm. I do not think this degree of certainty is indispensable in a complaint or a decree. There is no such thing as delivering possession in the execution of the decree. That consists in the execution and delivery of a conveyance of the 240 acres and the payment of the balance of the $1700. It is not material to the validity of that conveyance that the description should be more definite than the description in the complaint, as we have already seen. But if it were necessary to describe the premises with more certainty, the court would order the defendant to give a deed, with the requisite description of the premises. The facts lie in his own knowledge, and it is with a bad grace that he complains of the plaintiff for not more particularly describing a farm with which he is himself perfectly acquainted, and which he has not described with any great certainty in his contract. There is another reason in favor of the plaintiff, even if the complaint were defective for uncertainty in the description. It is not so defective as not to contain facts enough to constitute a cause of action. The demurrer admits the facts that are clearly stated in the complaint, viz : that the 240 acres lie in Abington in Illinois, and that they are *the* 240 acres *owned by the defendant.* Now, in all human probability, the more particular description will be found in the proper public office ; for it is not to be presumed that this 240 acre parcel is a part of a larger tract owned by Edick. There is nothing in the contract or complaint to indicate that he owned a foot more land than this piece. The rule that once prevailed, that a pleading should be construed most strongly against the pleader, is now abrogated by the code, (§ 159,) which ordains that the allegations of the pleader shall be *liberally construed,* with a view to substantial justice between the parties. So, too, an old rule of pleading allowed a party to state a fact with less certainty than would otherwise be required; when the facts lay peculiarly in the knowledge of his adversary. That is the case in relation to the description of the premises under consideration. I repeat, therefore, that the demurrer admits facts enough to constitute a cause of action ; and *that* is sufficient upon this argument. If the defendant requires a

greater degree of certainty than this he must seek his relief by the mode pointed out in the code, by a motion that the pleading be made more certain and definite.

This disposes of all the objections, of any importance, to the complaint; and I have discussed the several subjects at more length than I should have done, but for the very ingenious and elaborate arguments that were submitted by the counsel, in behalf of their respective positions.

The demurrer is overruled, and the defendant has leave to plead, on payment of costs, in twenty days, &c.

[ONEIDA SPECIAL TERM, November 21, 1853. *Gridley*, Justice.]