## THE PEOPLE AND TAYLOR a. THE MAYOR, &c., OF NEW YORK.

*Supreme Court, First District; Special Term, July,* 1858.

*Again, Special Term, October,* 1858.

RECEIVER.—PLEADING.—ACTION FOR LANDS, RENTS, AND PROFITS.

In an action for lands, where the plaintiff shows an apparent right, and the party in possession has no legal title, and the rents and profits are in danger of being impaired, a receiver may be appointed in the first instance. But where some of the defendants in possession are irresponsible, and before the commencement of the action the rents and profits were in danger of being lost, it is no answer to the application for a receiver, that since the commencement of the action the responsible defendants, who clearly have no title, have taken measures for their collection and preservation.

---

In a complaint in an action for lands, it is sufficient to allege that the plaintiff is seized or possessed of some certain estate or interest in the premises; that he is entitled to the possession of the premises, and that the defendant unlawfully withholds from him the possession.

A complaint is not bad on demurrer, as not stating facts sufficient to constitute a cause of action, if it actually contain the elements of a cause of action, however inartificially they may be stated. On such demurrer it is the duty of the court to analyze the facts disclosed, and if the whole or any part of them can be resolved into a cause of action, the demurrer should be overruled.

The People of the State, and certain individuals who were their lessees, united in

The People and Taylor *a.* The Mayor, &c., of New York.

bringing an action for lands. The complaint alleged that the lands were owned in fee by the people, who, unless a lease thereinafter described was valid, were entitled to the possession; that the Corporation of the city of New York had taken possession of the premises, and rented the same to the other defendants, who, unless the lease thereinafter described was valid, wrongfully withheld possession from the People; that subsequent to such taking possession, the People gave to the individual plaintiffs a lease of the lands, who under the lease, if it was valid, became entitled to the possession, but the defendants wrongfully withheld it; that the defendants, who were in possession, refused to pay rents to the plaintiffs, being directed so to refuse by the Corporation, and that they paid their rents to the agents of the Corporation. The judgment demanded was for possession, and for rents and profits. The Corporation and certain individual defendants demurred jointly, on the grounds that the complaint did not state facts sufficient to constitute a cause of action; that separate causes of action were improperly joined, and were not separately stated; and that the People were not proper parties plaintiff, but should have been made defendants.

*Held,* 1. That the complaint contained but one cause of action—a claim for possession, and for damages for the withholding subsequent to the lease.

2. The Corporation were not shown to be in actual possession, and therefore there was no cause of action as against them, though they could not take the objection upon the joint demurrer, there being a cause of action against the other defendants.

3. The lease was not void as a conveyance of land held adversely, for the rule against such conveyances does not operate to prohibit conveyances of such land by the People or public officers.

4. That a cause of action was sufficiently shown in the individual plaintiffs against the individual defendants, and the demurrer must be overruled.

The commissioners of the land-office are empowered by law to lease lands of the State having improvements. The complaint claiming title to lands under such lease, did not allege that they had improvements, but alleged that the lease was duly executed by the commissioners under the authority of law vested in them.

*Held,* on demurrer, that it was to be presumed that the officers had not exceeded their powers, and that the lands had improvements.

The claim for rents and profits which the Code (§ 167) authorizes the plaintiff to set up in an action for lands, does not contemplate the specific amounts received by the defendant, while in wrongful possession, but simply a recovery of damages, as in trespass or as upon a suggestion for mesne profits in ejectment, before the Code.

I. *July,* 1858.—Motion by plaintiff for receiver and injunction.

*Hutchins, Stoughton,* and *Van Buren,* for the plaintiffs.

*Busteed, McKeon, Noyes,* and *O'Conor,* for the defendants.

DAVIES, J.—The facts charged in the complaint are: That the People of the State are the owners in fee of certain premises in

the city of New York, lying on the westerly side of that street, between Vesey and Dey streets, and extend westerly about 440 feet:

That the defendants the Corporation of New York have taken possession thereof, and have rented the same for market and other purposes:

That the People have made and executed to the plaintiffs Taylor and Brennan a lease for said premises for one year from April 24, 1858, at an annual rent of $5000, payable quarterly:

That the defendants withhold from Taylor and Brennan the possession of the premises, and that they are entitled to the rents and profits of the same from April 24, 1858:

That the tenants of the premises pay the rent thereof to the defendants, and refuse to acknowledge the rights of the plaintiffs, or to pay them the rent thereof:

That a small portion only of the rents collected have been paid into the city treasury, and that the persons so acting in the collection of the rents are pecuniarily irresponsible, and some not authorized to act; that the amount so paid is annually more than the sum of forty thousand dollars; and that the moneys are paid weekly:

That it would be the duty of the collector of the city revenue to collect and receive such rents if the same really belonged to the city, but that the same were collected by some other persons:

That the comptroller of the city has received but a small portion, if any, of the rents collected; that he has stated that the premises belong to the State, and therefore that the city has no legal right to collect and enforce payment of the same; and that for this reason he has refrained from exercising that control over the property which he would have done if it belonged to the city:

That the occupants of the premises are men of little or no pecuniary means; that they pay their rent weekly in advance; and that the same is in danger of being wholly lost, by reason of their want of means, and residence of many of them out of the State:

That the comptroller has stated that in his opinion a receiver ought to be appointed to take charge of and collect said rents, and hold the same for the benefit of whomsoever may be entitled thereto.

On the hearing, other affidavits were read on the part of the plaintiffs, showing that the premises in controversy were outside of the 400 feet from low-water mark on the North River:

That the mayor of the city concurred in the opinion of the comptroller that the title to the land was in the State, and not in the city, and that the city had no right to lease it or use the same.

On the part of the defendants, the Corporation, there is produced the affidavit of Mr. Serrell, city surveyor, setting forth that the premises in question have been reclaimed, by the defendants the Corporation, from the North River, by filling in the same: that such filling in began in 1844, and was completed in 1853: that since such filling in, the defendants, the Corporation, by their officers and agents, have rented the said premises, have claimed to own the same, and exercised acts of dominion over the same, and received the rents thereof in their own right.

Mr. Flagg, the comptroller, states that such filling was done under a claim of title to the land under water; and that since such filling, the defendants the Corporation have been in actual possession thereof, claiming to own the same in fee simple.

He further states, that the rents of said premises are being collected by Robert A. Haggerty, duly appointed for that purpose by the defendants, and that the same are being faithfully collected by him and paid into the city treasury:

That he has always supposed that it was the duty of said Corporation to collect such rents, whether the title to the said premises was actually vested in the defendants the Corporation or in the State: that he is not of the opinion that the appointment of a receiver is necessary to protect either the interests of the State or of the city: that such rents are now in due course of collection, and by proper persons.

The mayor makes an affidavit expressing the same views.

The affidavit of Baum shows that, as clerk of the market previous to the commencement of this suit, he collected the rents from the premises, and paid them over to the Corporation.

The affidavit of Haggerty shows, that since the commencement of this suit he has been appointed, as an officer of the finance department of the defendants, to collect said rents, and has collected the same, and paid them over to the Corporation.

First. As to the title of the city to the premises in question: It is conceded that they lie outside of the 400 feet granted to the Corporation by the Montgomery charter. The Dongan charter conveyed to the city the land between high and low water mark all around the island; and the Montgomery charter (1730) granted to the Corporation, on the North River, a strip of land extending into the river 400 feet from low-water mark.

In 1798 the Legislature passed an act authorizing the Corporation to lay out exterior streets on both rivers, of the width of seventy feet, and such streets were to be built at the expense of the owners of the adjoining lots fronting on the same, and the intervening spaces were to be filled up by them; and such proprietors, on filling up such intermediate spaces of ground, were to become owners of the same in fee simple.

In the case of The Mayor, &c., *a*. Farmer (5 *Sandf. S. C. R.*, 16), the Superior Court held that the proprietors referred to are the grantees of the Corporation, or their assigns, who had received grants to the full extent of the 400 feet owned by the Corporation, and that the intermediate spaces were those which, in consequence of the irregularity of the shores, sometimes intervened between the extremity of the Corporation grants and the regular streets in front of the river, which the act authorized to be built; and that these intervening spaces belonged to the State, and were granted by the State to the adjoining proprietors on the conditions expressed in the act.

This case was taken to the Court of Appeals, and the judgment affirmed upon the grounds taken in the Superior Court. The Corporation, as the owner of lands fronting on the river, built West-street and filled up the intermediate spaces, and became therefore the owners in fee simple of the lands extending to the westerly side of West-street. There their ownership terminated, and that of the people of the State commenced. They, as representing the crown, or former sovereign, own the bed of all navigable rivers which have the flux and reflux of the seas, and, as such owners, have the right to grant and sell the same without reference to the owners of the adjacent uplands; and the grantee of the crown or State can build upon or improve the land so granted, so as to cut off the owner of the lands from all access to the water. These points were distinctly ruled in

the case of Gould *a*. The Hudson River Railroad Company (2 *Seld.*, 522).

By section 5 of the act of 1798, it was made lawful for the Corporation to direct piers to be sunk and completed, in such manner as they might think proper, in front of said streets or wharves, at the expense of the proprietors of the lots lying opposite to the places at which said piers shall be sunk. In case the proprietors refused to sink and build the piers, the Corporation might do so, and receive the wharfage to their own use.

From the facts before me, it appears that the Corporation have built a bulkhead upon the land of the State, some 400 feet west of West-street, and filled in the intermediate spaces, and erected thereon buildings, which are used for market purposes. I do not find any title set up to these premises by the Corporation ; though it seems, by the affidavit of Mr. Serrell, that, at the time of the filling, it was done under claim of title,—upon what ground we have no information, and I am greatly at a loss to perceive any.

So little doubt has been entertained on this subject, that the present comptroller, who has large experience in city affairs, and who is not slack to assert and maintain the rights and interests of the Corporation, says, in his report to the Common Council, under date of Feb. 6, 1854 : "In the course of the last year or two, land has been gained from the North River, by constructing a bulkhead from pier No. 20 to pier No. 23, between Vesey and Dey streets, and covering an area equal to ninety full lots. A map of this land, including Washington Market, has been prepared by John S. Serrell. The new land is entirely outside of West-street, *which at that point is the exterior line of the* 400 *feet granted to the Corporation by the charter of* 1730, usually called the Montgomery Grant. The bed of the river, beyond the line of West-street, and of the four hundred feet embraced in the charter, belongs to the people of the State of New York; and before the land is sold [which he had recommended in his report], or any erections made on it, it is advisable to have the title settled by an act of the Legislature." It would appear from the affidavit of Mr. Mott, that the present mayor of the city entertained similar opinions as to the title of the State.

The title to the premises in question would seem therefore to be, free of all doubt, in the people of this State : it has been so decided by the highest court of the State, so recognized by the chief officers of the Corporation, and particularly the comptroller, whose especial duty it is to look after the property of the Corporation. It is so averred in the complaint; and I have looked in vain, in the papers put in to oppose this motion, for any denial of the title of the State, or any averment that the title is in the Corporation.

As to the appointment of a receiver. This court, by sec. 244, subdiv. 1, of the Code, is authorized to appoint a receiver before judgment on the application of either party, when he establishes an *apparent* right to property which is the subject of the action, and which is in the possession of the adverse party, *and* the property, or its rents and profits, are in danger of being lost, or materially injured or impaired.

Edwards, in his able work on *Receivers* (ed. of 1857, p. 18), says : " What is here meant by ' establishes an apparent right' is not very clear, when connected with an action before judgment. It is probable the use of a well-known term—*prima facie* right—is what is intended, and ought to have been the phrase."

It is undeniable that in this case the plaintiffs have established an apparent or *prima facie* right to the property the subject of the action.

It seems to be the well-settled rule, that where the right is clear, and the party in possession has no legal title, to appoint a receiver in the first instance. Such was the case of Stillwell *a.* Wilkins (6 *Mad. Ch. R.*, 49); and on appeal to Lord Eldon, he affirmed the appointment. The case of Lancashire *a.* Lancashire (9 *Beaven*, 120) is an authority for the position, that when the legal title is clear, or it is admitted, a receiver will be appointed.

In Fingal *a.* Blake (2 *Molloy*, 50), a receiver was appointed to take the possession of property from the heir-at-law, at the instance of a party claiming as devisee in trust under a will. In that case the court was satisfied upon the merits, that the heir was shut out from the inheritance, and therefore a trespasser.

In Cole *a.* O'Neill (3 *Md. Ch. Dec.*, 174), the chancellor says,

in a case somewhat analogous to this, " This is not a case, therefore, where a receiver is put upon property against the legal title. But it is a case in which the plaintiff shows an equitable title to a part of the property, and a legal and equitable title to another part, in which the defendant upon the case, *as it now stands*, makes out no title, legal or equitable, and in which the preservation of the property requires that it should be taken under the control of the court."

In that case, as in this, there was a large number of tenants of the property in dispute, and litigation with them was anticipated.

Upon these principles, therefore, this court would be justified in granting the motion for the appointment of a receiver. But under the Code the authority is expressly given—where the plaintiff, as in this case, establishes an *apparent* right to the property under controversy, and the property, or its rents and profits, are in danger of being lost, or materially injured or impaired—to appoint a receiver.

In the present case it is averred, and not denied, that the premises are in the occupancy of the defendants other than the Corporation ; that many of them are irresponsible and live out of the State; and it is quite apparent to me that, up to the time of the commencement of this suit, the city actually received, if any, but a small portion of the rents actually accruing from the premises. I think I cannot regard what has been done by the mayor and comptroller since this suit was instituted—to insure a more faithful collection of these rents, and application and payment of them to the Corporation—however commendable, as an answer to this application. Before this suit was instituted, it is undeniable that the rents and profits of the premises were lost, or certainly greatly injured or impaired. And I cannot resist the conviction that an attempt at the collection of the same by the defendants the Corporation, under the circumstances, must greatly impair and injure them, if it does not result in a considerable loss.

The chief officer of the city, and its chief financial officer, have united in the opinion that the Corporation have no title to these premises, and in that view this court concurs. With this known and authentic declaration of want of title in the Corporation, it is not to be supposed that these tenants, the other

defendants, will voluntarily or willingly pay their rents to the Corporation or its agents, whose chief officers declare they have no legal right to receive them. On the contrary, they will withhold them : litigation must ensue ; and if they are not in danger of being wholly lost to the city or the State, or the lessees of the latter, they must be to some extent greatly injured and impaired.

A receiver unites in himself the title of the State, of the Corporation, and the lessees of the State ; and to him the tenants must pay the rents without demur or loss to any of the parties in interest.

It is so clearly for the interest of all concerned that a receiver should be appointed to hold the funds for the party ultimately adjudged entitled to them, that I entertain no doubt of my duty in the premises. The case being novel and important, I have consulted with two of my colleagues of this judicial district, who concur with me in the result at which I have arrived.

An order will therefore be entered appointing Cyrus Curtiss, Esq., receiver of the rents and profits of the premises the subject of this action, with authority to let the same from time to time, not over six months, and to collect the rents of said premises which have accrued since the commencement of this suit ; that the defendants, and all persons in possession of said premises, render their attorn to said receiver, and that he be let into the possession thereof ; that said receiver give bonds for the faithful performance of his duties, with two sureties in the sum of twenty thousand dollars ; and that he deposit all moneys received by him from time to time, when the amount shall equal the sum of five thousand dollars, with the United States Trust Company.

II. *October*, 1858.—Demurrer to complaint.

*W. Hutchins* and *E. W. Stoughton*, for plaintiffs.

*Chas. O'Conor*, *Wm. C. Noyes*, and *R. Busteed*, for defendants.

SUTHERLAND, J.—Before the Code, when actions had names, this action would have been called, An action of ejectment to recover the possession of certain real estate in the city of New York.

The Corporation of the city of New York, and about one hundred and sixty of the other defendants, *jointly* demur to the complaint on the following grounds:

First. That it does not contain facts sufficient to constitute a cause of action.

Secondly. That three separate and distinct causes of action are improperly joined—to wit:

1st. A cause of action by the People for improvident and unlawful management of property by the city Corporation;

2d. An ejectment by the People, with a claim for damages;

3d. A like claim by Taylor and Brennan.

Thirdly. That said three causes of action are not separately stated.

Fourthly. That there is a defect of parties plaintiffs by the improper joinder of Taylor and Brennan, as plaintiffs, with the People,—who, being claimants adverse to the People, should be defendants.

The defendants, William H. Taylor and a few others, separately demur to the complaint on the following grounds:

First. That the complaint does not state facts sufficient to constitute a cause of action on behalf of the People;

Secondly. That there is a defect of parties by the improper joinder of Taylor and Brennan with the People.

As was pertinently said on the argument, " the complaint is essentially a pleading under the Code; it is without form."

Two sets of plaintiffs, by different attorneys—the People of the State by Lyman Tremain, their Attorney-general, and Taylor and Brennan by Messrs. Slosson and Hutchins, their attorneys—come into court, and in the same complaint say that the defendants unlawfully withhold the possession of certain premises in the city of New York, either from the People or from Taylor and Brennan; and, with other relief asked for, ask that the defendants " may be adjudged to render possession of said premises to the plaintiffs, *or to such of them as shall be declared entitled thereto ;* and to pay to them, *jointly or severally,* the sum of one hundred thousand dollars for the rents, issues, and profits of said premises, whilst the same have been unlawfully withheld from the said plaintiffs."

The facts stated in the complaint to show a right to the possession, or a right of entry, in either the People or in Taylor

and Brennan; and to a judgment, that either the People of the State or Taylor and Brennan recover the possession, with damages for the rents and profits, &c., are substantially as follows:

That the People of the State are now, and have been for many years, owners in fee of the premises, and are legally entitled to the rents, issues, and profits thereof up to the 1st May (year not specified), and to the possession thereof since, unless a certain lease thereof to Taylor and Brennan (afterwards particularly described in the complaint, and a copy of which is annexed thereto), be held valid: that the mayor, aldermen, &c., of the city of New York have taken possession of the premises, and through their agents rented the same, or the greater portion thereof, for market and other purposes, to the other defendants in the action; and *unless said lease be held valid*, withhold from the plaintiffs the People of the State the possession thereof, to *their* great damage and injury: that the commissioners of the land-office, on behalf of the People of the State, by virtue of the authority vested in them by law, executed and delivered to Taylor and Brennan a lease of the premises for one year from the 24th day of April, 1858, at the yearly rent of five thousand dollars, payable quarterly in advance: that under this lease, *if the same be held valid*, Taylor and Brennan became lawfully possessed of the premises on the first day of May preceding the commencement of the action (May, 1858): that Taylor and Brennan being so possessed of the premises, the mayor, &c., claiming to own said premises, have taken possession thereof as aforesaid, and through their agents have rented the same to the other defendants, who wrongfully withhold from Taylor and Brennan the possession of the premises, to their great damage and injury: that Taylor and Brennan are legally entitled to the possession of said premises under the lease, and to the rents and profits thereof *since* the first day of May, 1858: that the parties now in the actual possession of the premises claim to hold as lessees, or by permit of the mayor, &c., and have been directed by the agents of the city not to deliver possession thereof to the said plaintiffs, or to pay to them the rents thereof, but to pay the same to the agents of the city: that the tenants refuse to acknowledge the right of the plaintiffs, or to pay them the rent, but pay the rent to those who act, or claim to act, as the agents of the city to receive the same: that the occupants of the premises pay,

and for several years preceding the commencement of the action had paid in the aggregate, for the use of the premises, the sum of forty thousand dollars annually.

These appear to be all the allegations in the complaint bearing on the question of the right of possession, or to damages for the withholding the possession, or to the rents, issues, and profits.

There are other allegations in the complaint;—as to the loose and improvident manner in which the rents of the premises had been collected and payed over; the pecuniary irresponsibility and want of authority of persons professing to act for the city in the collection of the rents; the danger that the rents will be lost by the city and by the plaintiffs; the duty of Mr. Flagg, the city comptroller, to collect the rents, if they belonged to the city, and his refraining from collecting the same, because he believed that the premises belong to the State, and that the city had no legal right to such rents; the non-residence and want of pecuniary means of many of the defendants, &c. But these last allegations appear to have been made for the purpose of obtaining the temporary injunction restraining the city corporation from collecting the rents, and the receiver to take charge of the premises and collect the rents, and the *general relief* asked for in the complaint.

From the wreck of forms effected by the Code, and the alternating cases, strange mixture of allegations of fiction and fact, alternative judgment, and confused union of legal and equitable relief presented and asked for by the two sets of plaintiffs in this complaint, I have diligently and patiently tried to pick out one good cause of action, in behalf of either the People or of Taylor and Brennan against either the city corporation, or the tenants alleged by the complaint to be in the actual occupation of the premises. I say allegations of *fiction* and of fact in the complaint; for it is evident that the allegations of actual possession by the People of the State and by Taylor and Brennan, and of actual ouster by the mayor, &c., actually or inferentially alleged in the complaint, were inserted therein under the mistaken impression, countenanced by a few reported cases since the Code, that the fictitious (in most cases) allegations of actual possession by the plaintiffs on a certain day, and of entry and ouster thereafter by the defendants, retained by the Revised Statutes out of the old fictions of the action of eject-

ment, had also been preserved by the Code. (See Ensign *a.* Sherman, 13 *How. Pr. R.*, 35 ; Warner *a.* Nelligar, 12 *Ib.*, 402.) But the first of these cases was reversed by the general term in the second district (14 *How. Pr. R.*, 439), and I suppose it may be said to be pretty well settled now, that in an action to recover the possession of real estate under the Code, it is only necessary for the plaintiff to allege in his complaint that he is seized or possessed of some certain estate or interest in the premises ; that he is entitled to the possession of the premises ; and that the defendant unlawfully withholds from him the possession thereof. (Walter *a.* Lockwood, 23 *Barb.*, 228 ; Sanders *a.* Leavy, 16 *How. Pr. R.*, 312.)

It is not good cause of demurrer that there are too many plaintiffs or too many defendants. (Peabody *a.* Washington County Insurance Company, 20 *Barb.*, 340 ; 12 *How. Pr. R.*, 134 ; 1 *Abbotts' Pr. R.*, 82 ; *Code*, § 144.)

Nor is it good cause of demurrer, that the plaintiff asks in his complaint for more than it shows he is entitled to ; for relief that he is not entitled to ; or for further relief than he is entitled to.

Nor is the insertion in the complaint of redundant or impertinent matter, or of irrelevant or unmeaning verbiage, cause of demurrer.

If I understand the Code, and the tenor and spirit of the decisions under the Code, the plaintiff may present in his complaint a mass of heterogeneous facts, and a volume of unmeaning words, and any number of prayers for the most various and inconsistent relief ; and none of these defects can be reached by demurrer, provided the complaint contains, no matter in what state of disorganization, the elementary constituents of a good cause of action. (Watson *a.* Hesson, 1 *Duer*, 242 ; Smith *a.* Gunning, 2 *Sandf.*, 702 ; Richards *a.* Edich, 17 *Barb.*, 260 ; Hammond *a.* Hudson River Iron & Mining Company, 20 *Barb.*, 386 ; 11 *How. Pr. R.*, 218.)

On demurrer to such a complaint, on the ground that it contains no cause of action, it is the duty of the court to uncover the mass of heterogeneous facts, and to sort out and to arrange them ; and if it is found that any lot or parcel of them, when arranged and placed together, will stand alone, as a cause of action, it is the duty of the court to overrule the demurrer.

I do not think the theory of the complaint in this case is more than one cause of action : that cause of action is to recover the possession of the premises, and the rents and profits as damages for the withholding the same.

The plaintiffs are evidently in doubt which of them has the right to the possession and to such damages; but I do not think that the theory of their complaint is, that if it should turn out that Taylor and Brennan were entitled to recover the possession, and damages for the rents and profits of the same since the execution of the lease to them, that the People of the State also claim, and will be entitled to recover in this action, damages for the rents and profits prior to the execution of the lease to Taylor and Brennan.

Such claims on the part of Taylor and Brennan for the possession, and damages for the rents and profits since the accruing of their right of entry, and on the part of the People of the State against either the city corporation or the tenants in possession, or jointly against both, for damages for the rents and profits prior to the accruing of Taylor and Brennan's title, could not be united in the same action before the Code ; and it would appear that they cannot be since the Code. (Leland *a.* Towsey, 6 *Hill,* 328; Ainslie *a.* The Mayor, &c., 1 *Barb.,* 169 ; Tompkins *a.* White, 8 *How. Pr. R.,* 520 ; Van Horne *a.* Everson, 13 *Barb.,* 531.)

It would appear from the complaint in this case, that because section 167 of the Code, in speaking of causes of action which might be joined, specifies claims to recover real property, " with or without damages for the withholding thereof, *and the rents and profits of the same,*" that the plaintiffs supposed that either the People or Taylor and Brennan could recover in this action, with the possession of the premises, the specific rents, paid or payable by the tenants in possession to the city corporation as their landlord ; in other words, that by the Code, while the action for the possession proceeded on the idea that the defendant was a trespasser, that the claim for the rents, &c., in the same cause of action could proceed on the idea that he was a tenant of the plaintiff; and that thus the defendant could be treated as both a tenant and a trespasser in stating the same cause of action.  From this idea probably proceeded the plaintiff's allegations in the complaint, going to show that there was

danger of the rents being lost; of improvident and careless management in the collection of the rents; of doubts of Mr. Flagg as to the title, &c.; the prayer for an injunction and a receiver;—which have added so much to the confusion of the complaint.

But I suppose the Code cannot justly be charged with the absurdity the complaint would appear to assume. I suppose that in an action under the Code to recover the possession of real estate, the further claim and proceeding allowed in the action to recover the rents and profits, &c., are also allowed against the defendant as a trespasser; in other words, that they are allowed as a substitute for the action of trespass, and the suggestion on the record for the mesne profits, before the Code. (Tompkins *a.* White, *supra.*)

In such action for the possession, or in a separate and independent action for the mesne profits against the landlord or the tenant, or both jointly, which probably could be brought now as well as before the Code (see case in 6 *Hill, supra*), the plaintiff would be entitled to recover as damages what he could prove the premises were reasonably worth annually; and not, as a matter of course, the specific amount of annual rent which the tenant had paid or agreed to pay, or the landlord had received or agreed to receive.

Upon the whole, although I at first thought the complaint in this case was intended to contain a separate and independent cause of action on the part of the People for the rents and profits prior to the execution of the lease to Taylor and Brennan, yet upon further examination I think it was not intended to contain any claim for rents and profits as damages for withholding the possession, or otherwise, except as incident to the claim and right to recover the possession.

There is, therefore, not more than one cause of action in the complaint.

Are there facts in the complaint sufficient to constitute one cause of action, by either the People of the State or by Taylor and Brennan, against either the city corporation or the other defendants, the tenants in the actual occupation of the premises, for the recovery of the same, with or without damages for the withholding thereof?

This is the question, and I think the only question on these demurrers.

It is very clear that there is no cause of action, by either the People or by Taylor and Brennan, against the city corporation for withholding the premises, &c., stated in the complaint.

The complaint shows that the Corporation does not withhold the possession of the premises; but that the tenants in the actual occupation, the other defendants, do.

The complaint showing that the premises in question were actually occupied by the tenants of the city corporation, it shows that the plaintiffs had no right to make the city corporation a defendant in an action to recover the possession of the same.

The rule of the Revised Statutes, that in such a case the tenants in the actual occupation should alone be made defendants, has not been altered by the Code. (Champlain and St. Lawrence Railroad Company *a.* Valentine, 19 *Barb.*, 484–493; Van Horne *a.* Everson, 13 *Ib.*, 526; Fosgate *a.* Herkimer Manufacturing Company, 9 *Ib.*, 287; *Van Santvoord's Plead.*, 2 ed., 176, 177, 178, n. (1); Shaver *a.* McGraw, 12 *Wend.*, 558; Putnam *a.* Van Bensen, 7 *How. Pr. R.*, 31.)

Had the city corporation demurred separately in this case, on the ground that there was no cause of action stated in the complaint against it, I should have sustained the demurrer; but the demurrer being a joint demurrer by the Corporation and most of the other defendants, the demurrer must be overruled, if the complaint shows a cause of action, by the People or by Taylor and Brennan, against such other defendants. (Eldridge *a.* Bell, 12 *How. Pr. R.*, 549; Phillips *a.* Northrop, *Ib.*, 17; Brownson *a.* Gifford, 8 *Ib.*, 392; *Van Santvoord's Plead.*, 671.)

We have arrived then at this question on these demurrers: Does the complaint show a cause of action, by either the People of the State or Taylor and Brennan, against the defendants who are alleged to be in the actual occupation of the premises as tenants of the city corporation?

On the theory which evidently dictated the complaint, I think it does not. It is evident that the complaint assumes that the rule, that a conveyance of lands held adversely is void, and gives no right of entry to the grantee, applied to conveyances by

the People of the State.  Hence the two sets of plaintiffs, the alternative prayer for judgment, and some of the other peculiarities of this complaint.  The complaint was evidently intended to meet the plea of adverse possession at the time of the execution of the lease to Taylor and Brennan, which it was supposed the defendants could or might set up.  This, by the Revised Statutes, could be done by naming the grantor and grantee as plaintiffs in different counts (Ely a. Ballantine, 7 *Wend.*, 470); but I suppose that this privilege of fiction has fallen before the realities of the Code, and that now, by the Code, the action must be brought in the name of the real party in interest. (*Code*, § 3.)

The Code supposes that the plaintiff knows both the law and the facts of his case, so as to be able to verify it by his oath, and does not permit him to speculate, by stating the case, or his case, in different ways in different counts ; and I do not think it intended to make an action for the recovery of real property an exception.

If it were the law, as the plaintiffs appear to have assumed, that a conveyance by the People of the State of lands held adversely is void, I should not be able to find any cause of action whatever in the complaint ; for the complaint, while it alleges title in the People, the execution of the lease to Taylor and Brennan, and their right to the possession without qualification or condition, also contains other allegations of fact, from which it would appear that when the lease to Taylor and Brennan was executed, the premises were actually held and occupied by the tenants of the city, claiming under title adverse to that of the State ; and these contradictory allegations, in effect, in stating one and the same cause of action—the first showing a right in Taylor and Brennan to bring the action, and the second showing the lease to Taylor and Brennan void, and therefore showing a right in the People of the State to bring the action—would neutralize each other, and probably leave the complaint without any cause of action certainly and sufficiently stated, in either the People or in Taylor and Brennan.

But the complaint was plainly dictated under an error as to the law.

Neither the common-law rule or the statute, making conveyances of land held adversely void as to the party in possession,

applies to conveyances by the People of the State, or by public officers duly authorized. Such conveyances are not within the reason of the common-law rule or of the statute; and strictly, there can be no adverse possession as against the People—the People of the State cannot be disseized. (Jackson *a.* Gumaer, 2 *Cow.*, 552; Allen *a.* Hoyt, *Kirby's R.*, 221; Barney *a.* Cutler, 1 *Root's R.*, 489, 491; La Frombois *a.* Jackson, 8 *Cow.*, 589.)

It follows, that the lease to Taylor and Brennan was valid, and gave them a right of entry, although the premises at the time were actually held and occupied under a title hostile to the title of the State; and having the right of entry, Taylor and Brennan could bring their action to recover the possession of the same, and the rents and profits since the execution of the lease as damages, &c. The complaint contains this cause of action on the part of Taylor and Brennan alone, against the defendants, the tenants in the actual occupation of the premises, alone; but this is sufficient to save the complaint, on this joint demurrer, by the city corporation and the other defendants. The plaintiffs must therefore have judgment on the demurrer, with liberty to the defendants, or such of them as have not answered, to answer in twenty days on payment of costs.

In arriving at this conclusion, I have assumed that it sufficiently appears that the commissioners of the land-office were authorized to execute the lease to Taylor and Brennan.

By Laws of 1819 (p. 300, § 3), the commissioners of the land-office may lease, for a term not exceeding one year, any lands belonging to the State, having improvements on them. It is not alleged in the complaint that the premises leased to Taylor and Brennan had improvements on them; but it is alleged that the lease was duly executed by the commissioners under the authority by law vested in them, and as public officers are to be presumed to do their duty, and to act within the powers given them by law, unless the contrary appears. I think it sufficiently appears that the commissioners had power to execute the lease to Taylor and Brennan.