## JOHNSON v. UNION SWITCH & SIGNAL CO.

(*Superior Court of New York City, General Term.*   April 7, 1890.)

CONTRACTS—CONSTRUCTION—PURCHASE OF PATENT-RIGHTS.

Plaintiff, who owned certain patents useful in the defendant company's business, made a contract, which, after reciting that plaintiff "has licensed the company to use certain inventions," provided that plaintiff "grants, sells, and conveys" to defendant "the exclusive right, except as hereinafter provided, to the use of all the inventions," defendant agreeing to pay for such use an annual sum, and to employ plaintiff on a salary; the contract to continue for 10 years, subject to determination by either party on notice.   The contract then provided: "It is further mutually covenanted and agreed that, in the event of the termination of this agreement, the said company, by reason of the expenditures that shall have been made during the continuance of this agreement, shall have a license, not exclusive, to use all of the inventions * * * on payment of * * *, and shall be entitled to purchase * * * the exclusive right to use" them.   *Held*, that the contract did not provide for an executed license after termination of the agreement, but for an option, of which defendant might avail itself on payment of the stipulated sum.

2. SAME—ACTION—PLEADING.

In an action on such contract, after its termination, for money alleged to be due from defendant for use of the patents after such termination, a complaint, which does not allege that defendant exercised such option and used the patents is demurrable.

INGRAHAM, J., dissenting.

Appeal from special term.

Action by Charles R. Johnson against the Union Switch & Signal Company. The complaint alleged that in September, 1886, a contract was entered into between plaintiff and defendant whereby it was agreed as follows:

"Whereas, by various agreements now in force between the Union Switch and Signal Company and Charles R. Johnson, said Johnson acts as the signal engineer of the said company, makes contracts to erect the interlocking apparatus, and has, over and above his salary, a portion of the profits as compensation, and has licensed the company to use certain inventions necessary in connection with the interlocking business, all of which agreements are to terminate on the 30th day of June, 1888, or as soon thereafter as present contracts are completed; and whereas, in lieu of these agreements above terminated, a new agreement has been determined upon, now, to evidence the same, this memorandum of agreement between said Union Switch and Signal Company, party of the first part, and Charles R. Johnson, party of the second part, witnesseth as follows: *First.* Said Charles R. Johnson is hereby appointed general manager of the said company. * * * *Third.* Said

Charles R. Johnson hereby grants, sells, and conveys to the said company the exclusive right, except as hereinafter provided, to the use of all the inventions that he, said Johnson, now has, relating to the signal business, or that he may hereafter make or acquire, and also the right to use the present inventions of Mr. Henry Johnson relating to signals and switches, and any others which he may hereafter make, including all which the said Charles R. Johnson has acquired, or may hereafter so acquire. *Fourth.* Said company hereby covenants and agrees to pay for the use of the said inventions the sum of three thousand dollars per annum, settlements to be made quarterly. *Fifth.* Said company further hereby agrees to the employment of Mr. Henry Johnson as manager of the company's works, so long as he shall prove entirely satisfactory to the general manager or the vice-president, at a salary at the rate of four thousand dollars per annum. *Sixth.* Said company further hereby agrees to pay to said Charles R. Johnson, in addition to the aforesaid compensation for patents and salary, a sum equal to ten per cent. of the net profits of the company, after having provided for all the expenses of the operation of the company. * * * *Seventh.* It is mutually agreed that this contract shall continue for a period of ten years, subject to termination by either party, however, by one year's notice, in writing, to the other party, at any time after the second year, or by the death of Charles R. Johnson, or by his permanent inability to perform his duties as general manager. *Eighth.* It is further mutually covenanted and agreed that, in the event of the termination of this agreement, the said company, by reason of the expenditures that shall have been made during the continuance of this agreement, shall have a license, not exclusive, to use all of the inventions that may have been used in carrying on the business of the company on the payment of sixty-five hundred dollars per year, said sum to be paid quarterly, and shall be entitled to purchase from the said Charles R. Johnson or the executors, the exclusive right to use all of the inventions upon as favorable terms as he or his executors may be willing to grant to any other parties."

The complaint further alleged that said contract continued in existence, and was acted upon by both parties, down to the 1st day of March, 1888, when it was terminated by defendant, and plaintiff was notified by defendant to that effect, and that his services would be no longer accepted after March 1, 1888; that, under the contract, there was due to plaintiff on the 1st of December, 1888, as royalties to be paid by said contract by defendant to plaintiff, the sum of $1,625, being for one quarterly payment extending from the 1st of September to the 1st of December, 1888, at the rate of $6,500 per year; that the said patents or inventions so owned or controlled by the said Charles R. Johnson, and referred to in said contract and in this complaint, were and are as follows:

| | |
|---|---|
| Interlocking machine, United States patent No. | 317,137 |
| Selector, | 342,911 |
| Switch-bar locking movement, | 358,933 |
| Signal movement from drawbridge, | 361,419 |
| "          "          "          " | 361,420 |
| Crank stand, | 372,539 |
| Motion plate clip, | 377,430 |
| Liquid compensator, | 309,627 |
| Signal slot, | 334,232 |

Plaintiff demanded judgment against defendant for the sum of $1,625, with interest from December 1, 1888, and costs. Defendant demurred to the complaint on the ground that it did not state facts sufficient to constitute a cause of action. The demurrer was sustained. Plaintiff appeals.

Argued before SEDGWICK, C. J., and FREEDMAN and INGRAHAM, JJ.

*Miller & Savage,* for appellant. *Carter, Hughes & Cravath,* for respondent.

FREEDMAN, J.   In construing the contract between the parties as a whole, the eighth section must be held to provide, not for an executed license, but for an option, of which the defendant may avail itself upon paying a mentioned sum.   The fact that no time is fixed anywhere for the continuation of the so-called "non-exclusive license" imperatively calls for that conclusion, under all the circumstances.   There is no indication anywhere that it was the intention of the parties that the license should continue for the time the contract would have run, if it had not been terminated; and there is no logical connection between the duration of the license and the time fixed for the duration of the contract.   In fact, the license was not to come into existence until after the termination of the contract.   Another difficulty is that there are quite a number of patents, issued at widely-different times, and which, consequently, will expire at widely-different times, and that, in the absence of everything showing a meeting of minds as to a certain period, it is not reasonable to suppose that the defendant agreed to pay $6,500 per year until the expiration of the patent last issued.   The most reasonable construction is that section 8 gave to the defendant merely the option to use the patents on the payment of the sum of $6,500 per year, and that the time during which such use and such license were to continue was left for future consideration and negotiation.   There being no express or implied promise to pay the $6,500 per year, and no ground for implying one, the plaintiff was bound to show in his complaint that the defendant exercised the option and used the patents, or some of them.   The judgment and order should be affirmed, with costs.

SEDGWICK, C. J., (*concurring.*)   I agree with Judge FREEDMAN, and wish to make a few further observations.   The rule of construction given in *Decker* v. *Furniss*, 14 N. Y. 611, should be followed.   It is: "There is no doubt that the phrase which stands at the commencement of the contract, ' William H. Brown sells,' etc.; imports of itself an executed sale.   But the books furnish abundant evidence that phrases of this kind are used in a very loose sense, and that their literal signification is often overruled by the tenor and purpose of the whole instrument.   So a party to a contract may say ' he agrees to sell,' and yet the intention be entirely manifest that the title shall pass immediately.   Such phrases are quite inconclusive, and are often made to yield to other terms of the contract evincing a different design."   The covenant, leaving out words not involved in the controversy, reads: "It is further mutually agreed that, in the event of the termination of this agreement, the said company, by reason of the expenditures that shall have been made during the continuance of this agreement, shall have a license, not exclusive, to use all of the inventions that may have been used in carrying on the business of the company on the payment of $6,500 per year, to be paid quarterly."   It appears that the sole consideration of the grant of the privilege to use is indicated in the words "by reason of the expenditures that shall have been made during the continuance of this agreement," and the words "on the payment of $6,500 per year" do not refer to the making of the grant."   The latter words are a part of the description of the nature of the grant.   That part is a license to use on the payment of $6,500.   The general rule is that, nothing else forbidding, words that are relative must be held to refer to the last antecedent,—that is, that the payment refers to "to use;" and the further rule is that, the antecedent being ascertained, it must be read in the relative clause,—that is, that the payment is to be for the use.   It is not correct, in my judgment, to suppose that the relative clause refers to "shall have a license," etc., inasmuch as there had been, as has already been said, a consideration appropriated by the covenant to the granting of the privilege or license.   This view does not combat the position that a promise to pay the $6,500 was implied, but it is used to show that the payment was to be made

for the use. And, the further question being, was there an implied promise to use? I must say that there is nothing in the covenant, or the rest of the agreement, that indicates that the defendants were bound to use the inventions.

INGRAHAM, J., (*dissenting.*) I am unable to agree with my associates in the conclusion to which they have arrived. This action is brought to recover the amount due for one quarter under an agreement executed by the plaintiff and the defendant. I think that the true construction of this clause of the agreement is that, immediately upon the termination of the agreement of employment, the defendant did have a license to use all the inventions that may have been used in carrying on the business of the company. By operation of the agreement, without any further act on the part of either the plaintiff or the defendant, the license was created. No other construction can be given to the clause in question without disregarding the plain, obvious meaning of the words used. When an option was given, the language used was very different. It was, then, that the company should "be entitled to purchase." But when a grant was intended the words were: "Shall have a license." Such being the construction of the contract, it is clear that there was an implied obligation to pay the consideration expressed.

In *Booth* v. *Mill Co.* 74 N. Y. 21, ALLEN, J., says: "There is no particular formula of words or technical phraseology necessary to the creation of an express obligation to do, or forbear to do, a particular thing, or perform a specified act, if, from the text of an agreement and the language of the parties, either in the body of the instrument or in the recital or references, there is manifested a clear intention that the parties shall do certain acts. Courts will infer a covenant in the case of a sealed instrument, or a promise if the instrument is unsealed, for non-performance of which an action of covenant or assumpsit will lie." In the case of *Barton* v. *McLean*, 5 Hill, 257, plaintiff agreed to furnish what ore might be wanted in stocking a forge at a price not to exceed five dollars per ton, and the defendant refused to take any ore. It was held that the defendant was bound to accept and purchase from the plaintiff so much ore as was necessary to stock the defendant's forge. In *Richards* v. *Edick*, 17 Barb. 263, the plaintiff agreed to sell his farm for and in consideration of $1,750; but there was no express agreement by defendant to buy or pay for the farm. It was held that "when Richards agrees to sell his farm to Edick for $1,700, and two hundred and forty acres of land owned by Edick in the state of Illinois, and Edick signs the agreement, there is a promise to purchase and pay for the farm. The consideration expressed as clearly implied as though it were expressed in words. It was not merely a promise made by one party to the other; but it was an agreement made by both, and binding on both by every principle of law and morality applicable to the construction of contracts." And this case is cited with approval in *Baldwin* v. *Humphrey*, 44 N. Y. 615, where the same principle is applied. In the covenant in this case the same words are used. The clause in question commences: "It is further mutually covenanted and agreed"—what? That the defendant shall have a license on payment of $6,500 per year. To this covenant the words of Mr. Justice GRIDLEY in *Richards* v. *Edick*, apply: "When the defendant signed the agreement, there was a promise to pay for the license. The consideration expressed was as clearly implied as though it were expressed in words."

The tenth clause of the agreement strongly confirms the view that this construction was the one intended by the parties. It is there provided that, in the "event of the business of the company being terminated by circumstances over which the officers and directors have no control, this contract shall be null and void, and the license to use the inventions above referred to shall cease." If the defendants had the option to use the invention or not, as they

pleased, and were only obliged to pay when they used it, the provision would be entirely unnecessary. I am of the opinion, therefore, that the defendants were liable to the plaintiff whether they used the invention or not, and that the complaint set up a good cause of action. I think, therefore, that the judgment should be reversed, and judgment ordered for the plaintiff, as demanded in the complaint.