Selden, J.
 

 The most important, among the numerous questions- this case presents, is, whether the supervisor and commissioners of highways of the town of Otsego had power to enter into the agreement which lies at the foundation of the suit. By section 26 of the act to provide for the incorporation of plank road companies, passed May 7,1847, these officers are authorized to agree with such companies “ upon the compensation and damages to be paid by said company, for taking and using any of the highways of the town ;" and by section 1 of the act in relation to plank road companies, passed November 24, 1847, such companies are authorized to “ procure by agreement,” from the same officers, “ the right to take and use any part of any public highway necessary for the construction,” &c.
 

 At first view, it might seem, that the power to procure by agreement” the right to use the necessary lands, must include the power to agree upon the terms upon which such right should be acquired. But there are many things to be considered before this conclusion is adopted as applicable to the present case. By a careful scrutiny, it will be seen, that section 1 of the act of November, 1847, was not designed either to repeal or "modify section 26 of the previous act. Under the first act, a plank road company, notwithstanding it might have agreed with the officers of a town upon the compensation to be paid for the use of any of the highways of such town, and might also have obtained by agreement the rght to all private lands along the line of its road, was ‘still required to apply to the board of supervisors for leave to lay out and construct its road, and thus to subject itself to all the delay and expense attending the appointment and action of commissioners to lay out the road. The officers of towns, although authorized to agree upon the amount of compensation for the use of- highways,
 
 *378
 
 were not authorized to grant the right to such use. Section T of the act of November, 1847, was plainly intended to remedy this inconvenience, and to relieve plank road companies from the unnecessary burden. The two sections, therefore, are to be taken together, in determining the extent of the powers conferred upon the supervisor and commissioners. Section 1 of the last act gives the power to grant the right to use the highways of the town, and section 26 of the former, to agree upon the amount of compensation. The two sections, when united, specifically confer these powers and no other.
 

 It is a general rule that public officers, acting under a statutory authority, must confine themselves strictly within the powers conferred by the act. This rule has been recognized and applied by the supreme court at general term, in the second district, in a case in principle not unlike the present. (See
 
 Webb
 
 v.
 
 Albertson,
 
 4
 
 Barb. S. C. R.
 
 51.) It seems that the village of Greenport upon Long Island lies within the limits, and is a part of one of the towns' in the county of Suffolk. Some of the inhabitants of the village, being desirous to have one of the streets therein extended and opened, applied to the commissioners of highways of the town, who alone had power to make the improvement. The commissioners consented to do it, but took a bond from the applicants, to indemnify the town against the expenses ; and the action was upon this bond. Upon demurrer it was held, that the action would not
 
 lie;
 
 that the commissioners were authorized to lay out and open the road, if in their judgment the public convenience required it; but not, as the learned judge who delivered the opinion expresses it, “to be tampering with parties, and making conditions.” Much of the reasoning in that case is applicable to this. There are other objections to the .existence of the power exercised by the supervisor and commissioners of highways in this case, growing out of the provisions of the plank road acts themselves. The power to agree, that no gate shall be located within a given distance of a certain point, involves the power to agree where the gate
 
 shall be
 
 located. I can see no ground for distinguishing between
 
 *379
 
 these different exercises of power. But section 37 of the first plank road act provides, that the commissioners of highways of any town,
 
 whenever
 
 they, or a majority of them shall be of the opinion that the location of such gate is unjust to the public interest,” &c. may apply to the county court for an order to change the location. This is a power which may be exercised
 
 from time to time.
 
 Changes may occur in the highways of the town, rendering such an application necessary. If, however, the location of the gate is fixed by contract between the company and the town, this remedy is cut off. Because, if the plank road company is bound by such a contract, the town must be bound also.
 

 But there is a still stronger objection to the condition, annexed by the supervisor and commissioners in this case to their grant. It interferes with and changes the tenure by which the plank road company hold the right to the use of the highway as prescribed by statute. Sections 28 and 30 of the original act provide, that whenever the proceedings by the company, to acquire the right to use any lands or highways for the purpose of their road, shall be perfected, the company may enter upon and take and hold such lands,
 
 “
 
 so long as the same shall be used for the purposes of such a roadand section 3 of the act of November, 1847, provides, that whenever any such company shall have procured by agreement, under the provisions of that act, the right to take and use the parts of any public highway, “ it shall possess the same rights and privileges,” &c. &c. as if the right had been acquired by the proceedings prescribed by the previous act. There is, therefore, a direct conflict between the condition annexed to the grant in this case, and the provisions of the plank road acts. The latter say, that
 
 whenever
 
 the company shall have acquired the right to use a highway, they may continue such use
 
 so long as its road shall
 
 continue. This condition says, that the right shall cease, if the condition is disregarded. I can see no answer to this objection.
 

 But conceding the agreement to be valid, the case presents the question, whether a bare naked condition, contained in a deed, unaccompanied by any words importing an undertaking to abide
 
 *380
 
 by or perform it, can be enforced as a covenant. If this action can be sustained, the validity of the agreement being admitted, then every condition inserted by the grantor in a deed creates a covenant on the part of the grantee, as •well as a condition because it is'impossible for an instrument to be more bald of any language importing an agreement to perform a condition, than the present. It is a little surprising that the cases on this subject, are not more numerous. The question seems to have rarely arisen, especially in modern times. It seems, however, to be settled by the older authorities. Littleton, in his work upon tenures, in treating of estates upon condition, says : “ Also, if the words were such; provided always that the aforesaid B. do pay, or cause to be paid, to the aforesaid A. such a rent, &c.; or these :• so that the said B. do pay, or cause to be paid, to the said A. such a rent, &c.; in these cases, without more saying, the feoffee hath
 
 but
 
 an estate upon condition; so as, if he doth not perform the condition, the feoffor and his heirs may enter.” Coke, in his commentary upon this passage, says : “ Our author putteth his case, when a proviso cometh
 
 alone.
 
 And so it is, if a man by indenture letteth lands for years, provided always,
 
 and it is covenanted and agreed,
 
 between the said parties, that the lessee should not alieneand it was adjudged, that this was a condition, by force of the proviso, and a covenant
 
 by force of the other
 
 words.
 
 (Coke Litt.
 
 203
 
 b.)
 
 There is a distinction, therefore, between the case of a naked condition, without covenant, and that of a condition connected with a covenant. Comyn says:
 
 “
 
 But where words do not amount to an agreement, covenant does not lie; as if
 
 they are merely conditioned to defeat the
 
 estate.”
 
 (Com. Dig. tit. Covenant, A.
 
 3.) Bacon asserts the same doctrine, and refers to the case of
 
 Geery
 
 v.
 
 Reason, (Cro.
 
 Car. 128 ;
 
 see Bac. Ab. tit. Covenant, A.)
 
 The case in Croke was this Greery, the plaintiff, had demised to Reason certain rooms in Bear alley, until midsummer, upon a rent of £6.13s.
 
 4d.
 
 The lease contained the following clause: “Provided and
 
 upon
 
 condition that the said Reason shall gather the rents of other the plaintiff’s tenements, in Bear alley, re
 
 *381
 
 served quarterly, and mentioned in a schedule, and pay the same within twenty days after every quarter dayand it is agreed, that the said Reason shall retain the rest of the benefit to be made -of the said rooms, over and above the said six pounds thirteen shillings and four pence per annum, for his pains in gathering up the said rents.” The plaintiff brought an action of covenant, for not collecting and paying over the rents mentioned in the schedule. The defendant demurred; and the court held, unanimously, that the clause in the lease did not constitute a covenant, but only a condition, upon the non-performance of which the estate was forfeited; and gave judgment for the defendant. It is clear from these authorities that there may be a condition without a covenant; and that where the language imports a condition merely, and there are no words importing an agreement, it cannot be enforced as a covenant, but the only remedy is through a forfeiture of the estate. This doctrine was repeatedly recognized by the late chancellor; although, in the cases before him, he held, that the clauses upon which the questions arose, contained covenants as well as conditions. In
 
 Livingston
 
 v.
 
 Stickles,
 
 (8 Paige, 402,) he says : “ The objection that the lease contains no covenant on the part of the lessee, or his assigns, to pay the tenth sale, so as to render them personally liable upon an alienation of the premises, with the consent of the lessor, does not appear to be well taken. If it were a mere condition,
 
 then it is evident the only remedy of the lessee would be by a proceeding against the purchaser to recover the premises, for a breach of the condition.
 
 But a clause of this kind may be so framed as to operate both as a covenant and as a condition.” Again, in
 
 Stuyvesant
 
 v.
 
 The Mayor &c. of N. Y.,
 
 (11
 
 Paige,
 
 414,) the same question arose, and was treated in the same way.
 

 But upon principle', independent of all authority, it would seem impossible to come to any other conclusion. It by no means follows, because a grantee consents to take ah estate subject to a certain condition, that he also consents to obligate himself personally for the performance of the condition. Many cases might be imagined, in which one would be willing to risk,
 
 *382
 
 the forfeiture of the estate, while he would be altogether unwilling to incur the hazard, of a personal responsibility in addition. The doctrine which the plaintiffs in this case are driven to maintain is, that to assent to the condition is to assent to the personal liability; that the one involves the other. I can see no sufficient ground for such an assumption. The two things are essentially distinct, and involve risks different in nature as well as degree. How can it be said, then, that to assent to the one, is to assent to the other. The action must have failed upon this ground, had the agreement been valid.
 

 There is still another objection which, in my view, is equally fatal to the action in its present form. It is difficult to conceive upon what principle, independent of some express statutory authority, the supervisor and commissioners of highways of a town can
 
 unite
 
 in the prosecution of a suit in behalf of such town. There is no community of interest or of office between them. They cannot be said, in any proper sense, jointly to represent the town or its rights and interests. Their union as plaintiffs is incongruous and repugnant to the plainest principles pf law, unless authorized by some legislative enactment. Besides, neither jointly or separately can these officers, or either of them, sue in their own names, in behalf of their towns, except in those cases where they are expressly authorized by statute. A town is a political corporation, and suits in its behalf must be prosecuted in the name of the town.
 
 (Cornell and Clark
 
 v.
 
 The Town of Guilford,
 
 1
 
 Denio,
 
 511.) But it is- supposed that see. 92, (2
 
 R. S.
 
 473,) which provides, that actions may be brought by supervisors and other officers, including commissioners of highways, “ upon any contract lawfully made with them or their predecessors, in their official character,” affords an authority for this action. It will be readily seen, however,' that the contract in this case is not such as is contemplated by the provision referred to. The statute does not say, contracts made
 
 by
 
 these officers in behalf of their towns, but
 
 with
 
 them, that is, in their names. It was intended to provide for cases where these officers, in the performance of their appropriate official duties,
 
 *383
 
 should take from others contracts running in terms to such officers by their names of office.
 

 Nothing of the kind exists here. There is no covenant or agreement running to these officers in terms. They, as the agents of the town, convey the right to use the highways upon a certain condition. It is virtually the act of the town through them. If any implied covenant arises upon the instrument, it is a covenant with the town, and must be enforced by and in the name of the town. It might be otherwise, if the instrument con-contained a covenant in express words, running in terms to the supervisors and commissioners. It is possible, though by no means clear, that in such a case the union as plaintiffs of these two separate, independent, quasi corporations, might, under the section referred to, taken either alone or in connection with sec. 113 of the code, be maintained. Taking this case, however, as it is, the action could not, I think, whatever view we might take of the contract, he supported in the name of the present plaintiffs.
 

 The record presents several minor points; but as either of those already considered is decisive of the case, I deem it unnecessary to notice the others. The judgment should be reversed.
 

 Denio, Johnson, Parker, Edwards and Allen, Js., were in favor of reversing the judgment on each of the grounds discussed in the foregoing opinion.
 

 Gardiner, Ch. J., delivered an opinion in favor of reversal on the first ground discussed in the opinion of Selden, J., and concurred in his conclusions on the others.
 

 Judgment reversed.