DANIEL M. GAILOR, Supervisor of the town of Wilton, *vs.* GEORGE W. HERRICK.

A town has no right to money improperly collected by tax from its tax payers, and cannot maintain an action in the name of its supervisor to recover it back.

Where money has been collected by a town collector, under a warrant of the board of supervisors, for the purpose of paying the land damages occasioned by the laying out of a highway which was never worked or opened for the reason that the proceedings to lay out the road were null and void, and such money has been paid to a commissioner of highways, who has paid the same over to the persons entitled thereto, for their damages, no action will lie against such commissioner after the expiration of his term of office, upon his official bond, by the supervisor of the town, to recover such moneys.

Money raised by taxation does not go or belong to the towns. They have no treasury to receive it. But when collected it is to be paid over to the treasurer of the county, or to the officers and persons designated by law to receive it. *Per* BOCKES, J.

THIS action was brought upon the official bond given by the defendant as commissioner of highways of the town of Wilton. The plaintiff alleged in his complaint that he was the supervisor of the town of Wilton, in the county of Saratoga, duly elected and qualified according to law, and acting as such. That the defendant was duly elected and qualified according to law as commissioner of highways of the said town of Wilton, at the annual town meeting held on the first Tuesday of March, 1857, and immediately entered upon the duties of said office, and continued to act

as one of the commissioners of highways, for the term of three years, and until the first Tuesday of March, 1860, at which time Ebenezer Ketchum was duly elected and qualified as commissioner of highways of said town of Wilton, in the place of the defendant, who immediately entered upon the duties of said office, and had continued to act as such commissioner up to this time. That the defendant, before entering upon the duties of said office, and on or about the 10th day of March, 1857, with Derrick I. Levisee and Anson M. Boice as sureties, made and executed their joint and several bond, to Tabor B. Reynolds, then supervisor of the said town of Wilton, or his successors in office, in the penalty of $1000. That the said bond and the sureties were duly approved, and the same duly filed in the town clerk's office of the said town of Wilton, on or about the 10th day of March, 1857. That such bond was in the penal sum of $1000, conditioned that George W. Herrick should faithfully discharge his duties as commissioner of highways of said town of Wilton, and within ten days after the expiration of his term of office, pay over to his successor what money should remain in his hands as such commissioner, and render to such commissioner a true account of all moneys received and paid out by him as such commissioner. The complaint further alleged that the defendant during his said term of office as such commissioner of highways, received large sums of money belonging to the said town of Wilton, and at the expiration of his term of office the defendant held the sum of $290 of such money and still holds the same, except about $190, paid about the month of June, 1860, and although often requested, had refused and neglected to account or pay over the same to said Ebenezer Ketchum, his successor in office, or any part of the same, but now holds and retains the sum of $190 of such money, belonging to the said town of Wilton. Wherefore, the plaintiff, as such supervisor, demanded judgment against the defendant for the sum of $1000, besides costs.

Gailor *v.* Herrick.

The defendant, by his answer, denied the allegations of the complaint; and for a further answer averred that the money mentioned in the complaint as being in the hands of the defendant, was money raised on the warrant of the board of supervisors, for the purpose of paying the damages occasioned by the laying out of a highway by the commissioners of highways of the town of Wilton, through the lands of James D. Stiles, John Ingersoll and Miles Ingersoll, with others; that the said $190, claimed in the complaint, was received of the collector of said town of Wilton by the defendant, and was paid over to the persons hereinbefore named, to whom the same belonged, in the sums and proportions as follows: to the said James D. Stiles $90; to the said Miles and John Ingersoll $50 each; and that said money was raised by said board of supervisors expressly to pay to said persons for the said damages; that in case the said money was improperly raised, and said persons before mentioned, to whom the same was paid, were not entitled to the several sums paid to them respectively, the town of Wilton was not entitled thereto nor to any part thereof, nor was the defendant liable to the plaintiff, as supervisor or otherwise, therefor, in this action.

A stipulation was entered into by and between the attorneys for the respective parties, to admit on the trial the following facts, to wit: (1.) That from the annual town meeting in March, 1857, to March, 1858, Taber B. Reynolds was supervisor of the town of Wilton; that the defendant with his sureties, Derrick I. Levisee and Anson M. Boyce, made, executed and delivered the bond set out in the complaint, on the 10th day of March, 1857, which was duly approved and filed in the town clerk's office of said town on the same day. That during the year 1862, and at the commencement of this action, Daniel M. Gailor was supervisor of said town, and successor to the said Reynolds. That in March, 1857, the defendant was elected one of the commissioners of highways of said town, and duly qualified as such,

and entered upon the duties of said office; and that he continued such commissioner of highways until the expiration of his term, in March, 1860, at which time Ebenezer S. Ketchum was duly elected, at the annual town meeting in said town, and qualified as commissioner of highways in said town, in the place of and as successor to the defendant, and entered upon the duties of his said office immediately. (2.) That in 1858 James S. Bracket and Stephen Washburn were the other two highway commissioners of said town, and on the 21st day of October, 1858, the said highway commissioners met in said town to examine into the merits of an application to lay out a highway through the improved land of James D. Stiles, Daniel Creal, John Ingersoll and Miles Ingersoll, in said town of Wilton. (3.) That at such meeting a majority of said commissioners, to wit, George W. Herrick and Stephen Washburn, decided to lay out said highway, not as described in said application, but commencing at the northerly end, about sixty rods westerly and intersecting the line described in the application, about one half mile southerly from the place of commencement; and thereupon employed James D. King, a surveyor, to survey said highway, so intended to be laid out; that the said King surveyed said highway, and filed their survey in the town clerk's office in said town of Wilton; that the last mentioned commissioners agreed with the several landowners upon the amount of their land damages, to be paid to them respectively, occasioned by the laying out of said highway, as follows, to wit: to James D. Stiles $90, Daniel Creal $100, John Ingersoll $50, and Miles Ingersoll $50; making in the aggregate the sum of $290 for said land damages. That afterwards, and on the 8th day of November, 1858, the three commissioners of highways of said town of Wilton made a certificate, which they delivered to Henry E. Wagman, then supervisor of said town of Wilton, for the purpose of raising said money, which statement and certificate is as follows, to wit: "To the supervisor of the town of Wilton, county of

Saratoga. We the undersigned, commissioners of highways of the town of Wilton, do report that the sum of two hundred and ninety dollars is necessary for a road through the lands of James D. Stiles, Daniel Creal, John and Miles Ingersoll; also, in addition, the sum of sixty dollars for repairs of bridges. Wilton, November 8, 1858." [Signed by the Commissioners.] (4.) That the said Wagman, supervisor as aforesaid, presented said certificate to the board of supervisors of the county of Saratoga, at their annual meeting in November, 1858, and the amount specified in said statement was audited by said board, and the same was subsequently collected by Ira Roods, the collector of said town, in 1859, under the warrant of said supervisors, and paid over to the said George W. Herrick, the defendant, who receipted the same as commissioner of highways. (5.) That the said commissioners of highways, nor any or either of them, never made, executed or filed a written order or determination laying out said highway, in the town clerk's office of said town of Wilton; and that said proceedings for the laying out of said highway were invalid, null and void. (6.) That in the mean time, the term of Stephen Washburn had expired as highway commissioner, and Walker S. Gilbert had been elected to succeed him as commissioner, in March, 1859, and upon application to the said Gilbert and Bracket to join in making and filing a written order and determination laying out said highway, by the defendant George W. Herrick, they refused so to do; and thereupon the said Herrick joined with Stiles and Ingersoll in making a motion to the supreme court for a mandamus directing the said highway commissioners to make and file said written order or determination laying out said highway; that said motion was made before the Hon. A. Bockes, a justice of the supreme court, on or about the 26th March, 1860, who denied said motion on the ground that the proceedings for the laying out of said highway were void; and on appeal to the general term of the supreme court, said order was affirmed. (7.) That after the

expiration of the term of Geo. W. Herrick, the defendant, as commissioner of highways as aforesaid, he paid $100 of said money so raised, for the damages occasioned by the laying of said highway, to Ebenezer S. Ketchum, his successor in office. (8.) The balance of said sum of $290, to wit, the sum of $190, of the money so raised on the warrant of the board of supervisors for said highway, had never been paid by the defendant to Ebenezer S. Ketchum, his successor in office, although often demanded, before and after the expiration of ten days after said defendant's term of office expired, and before the commencement of this action. (9.) That the defendant let the said John Ingersoll have $50, the said Miles Ingersoll $50, and the said James D. Stiles have $90 of said money, being the amount in his hands, and received from each of them severally a promissory note for the sum received by each respectively. (10.) That the commissioners of highways aforesaid had never laid out said highway, but refused to lay it out, and that the same had never been laid out, or opened or worked, and is not, and never was a highway.

The action was tried at a special term, upon the pleadings and the stipulation.

*J. T. Carr,* for the plaintiff.

*A. Pond,* for the defendant.

*By the Court,* BOCKES, J. It is entirely clear that neither the town of Wilton nor the plaintiff, either as supervisor or in his own right, shows any title to the money for which this action is brought. To this effect is the decision in *The Town of Gallatin* v. *Loucks,* (21 *Barb.* 578.) In that case money had been collected, as in this, under the warrant of the board of supervisors, for the purpose of paying the land damages occasioned by the laying out of a highway, which was never opened or worked, for the reason — the same as here — that the proceedings to lay the road were null and void. It was

Gailor *v.* Herrick.

intimated in the case cited that the money belonged to the tax-payers from whom it had been improperly collected. Judge Harris remarked that even if the town should recover the money, it would then be just as far from the reach of those from whom it had been taken as before; -that there were no means of compelling its distribution among those who had paid it to the collector. In *The Supervisors of Dutchess Co.* v. *Sisson,* (24 *Wend.* 387,) it was held that money improperly collected, as in this case, did not belong to the board of supervisors, although collected on their warrant; nor could the board of supervisors recover it for the use of the town from whose tax-payers it was collected. And it was there also decided that the person to whose hands the money had come was answerable only to the true owner. As *a corporation* the town has nothing to do with the highways within its limits, and of course nothing to do with the money raised for highway purposes. (22 *Barb.* 634. 27 *id.* 543. 11 *N. Y. Rep.* 376, 392.) Its officers receive the money when duly collected for those purposes, and direct its appropriation and use. But as was said by Denio, J. in *Lorillard* v. *The Town of Monroe,* (11 *N. Y. Rep.* 392–395,) town officers whose duties are prescribed by law are not in any legal sense the servants or agents of the town. It is very plain that the town of Wilton shows no title to the money claimed. As the case is here presented the town has no better right to it than the defendant. The claim by the town is put on the ground that the money was collected from its tax-payers. But this fact gave to the town no right to the money; certainly not if improperly collected. Money raised by taxation does not go or belong to the towns. They have no treasury to receive it. But when collected it is to be paid over to the treasurer of the county, or to officers and persons designated by law to receive it.

It is insisted that the defendant was bound by his bond to pay over this money to his successor, and that his neglect

Gailor *v.* Herrick.

and refusal so to do renders him liable to the supervisor in this action on the bond.

The condition of the bond was to the effect that he should pay over to his successor what money should remain in his hands as commissioner. Was this money in his hands as commissioner ? If so it was liable to be used by him or by his successor for highway purposes; that is, either for the improvement of roads and bridges or to be applied in satisfaction of land damages on the laying out of some highway. Yet it is certain that he held it for no such purpose. This money could not be legally appropriated to any such use. Would the defendant have been discharged from liability to the true owner or owners of the money if he had paid it over to his successor ? According to the decision in *Rheel* v. *Hicks*, (25 *N. Y. Rep.* 289,) he would not. In that case the court say that if the defendant (superintendent of the poor) had paid over the money claimed, to the county or into the poor fund, where he was bound by law to make return of moneys received by him in his official capacity, it would have made no difference. He would nevertheless have remained liable to the true owner. It is said that the defendant, in the case under consideration, received the money as commissioner, and reported it to the town officers as money in his hands as commissioner. So in *Rheel* v. *Hicks* the money was collected and received by Hicks as superintendent, and he treated it as money in his hands as superintendent, yet the court decided, as matter of law, that he held it for the true owner, to whom it was adjudged he was bound to pay it. If Hicks had been sued on his own bond, (for he was required by law to give one to the supervisors, and I presume did so, with the same condition as in this case) would the withholding of the money have been deemed a breach of the bond ? Clearly not, according to the decision in that case, by which decision Hicks was held to be answerable to Rheel. If responsible to Rheel he was not also responsible to the supervisors. He could not be compelled to pay to both.

It is said the defendant in this case is estopped from denying that he held the money as commissioner, because he gave a receipt for it as commissioner, and reported it in his hands as commissioner. But how he held the money, whether for highway purposes or otherwise, was a question of law, and consequently neither his receipt to the collector, nor his report as commissioner, nor both together, estopped him from setting up the truth as a defense. It was held in *Brewster* v. *Striker*, (2 *N. Y. Rep.* 19–41,) that a party is not estopped by his admission or assertion of a conclusion of law upon undisputed facts. It was said in *Rheel* v. *Hicks*, that when it was ascertained that all parties had acted under a mistake, the defendant would no longer hold the money for the original purpose.

It is impossible, I think, for the plaintiff to recover. He shows no right or title to the money, either in himself in his own right, or as supervisor, or for the town; nor did the defendant hold the money under any liability or obligation to use it or to pay it over to his successor for highway purposes. The complaint must be dismissed with costs.

[SARATOGA SPECIAL TERM, April 4, 1864. *Bockes*, Justice.]