By the Court,
Robertson, Ch. J.
The basis of damages adopted in this case would only have been justifiable on the plaintiff’s construction of the obligations of the defendants, in case they had a right to subject all the coffee received by them to a process similar to that of the plaintiff, by a machine, or could, by proper exertions, have acquired such right. It coxdd not be presumed, as matter either of law or fact, that the owners of all coffee, sound and unsound, placed in their *250 hands to be cleaned, would, have had it all submitted to the plaintiff’s process, or any more of it than the “ shimmings,” after being separated by hand from the undamaged part. It would, therefore, have been either an abuse of the confidence reposed in the defendants, as agents, to have subjected, of their own accord, such owners to the expense of “machining” the whole of such coffee, when unnecessary, or a preposterous burden upon themselves, to have done it without compensation, because they had possession of the coffee merely, in order to earn a right for the plaintiff to demand the tolls reserved to him. The defendants, therefore, were clearly not liable for the" royalty on the whole of such coffee. As no data were furnished, on the trial, to estimate the quantity of “ shimmings ” in such ah amount of coffee, the verdict cannot be rectified by a reduction. The amount of damages, alone, therefore, would warrant the granting of a new trial.
But the plaintiff’s recovery is subject to a graver objection, lying at the foundation of his cause of action. The main ground upon which he claims the liability of the defendants for so much tolls as would have accrued to him by the renovation by them, by his process, of as much coffee as they could with reasonable diligence have procured to be subjected to it, is the phrase respecting keeping machinery in operation, contained in the condition in the first part of the instrument of March, 1858, in reference to disputes between the defendants already referred to. There can be no doubt that the whole clause was intended to contain a condition and nothing else, however qualified. Since it not only commences with the terms, “it is further conditioned,” but is inserted after a general grant of an indefinite interest upon conditions which are said to follow; and before the second part of such instrument, which contains a more precise- grant, said to be “ in consideration of the foregoing condition, and a compliance therewith.” The only condition immediately preceding such last grant, was a restriction on selling patent rights without the plaintiff’s consent. That clearly could not have been the *251 only condition, for a compliance with which, the grant was made.
When scrutinizing all the terms of such condition to determine the construction of such qualifying phrase, two or three things are to he kept in view. In the first place, the first condition of such grant by whose non-performance it was defeasible, was the payment of the prescribed tolls for all coffee, which passed through the plaintiff’s cylinders and process, without specifying by whom. A fair construction of that would undoubtedly be, by virtue or in consequence of the grant,to the defendants. But they had a right to transfer the whole or any part of the subject of such grant, and their vendees would have the right to use any quantity of machinery to carry on such process. And the plaintiff would have the right to the prescribed tolls for such use, to be enforced by a forfeiture of the grant in case of non-payment. If the defendants should by such instrument undertake, therefore, to pay such tolls, they would not only have paid five thousand dollars for the patent right, but have undertaken to keep the machinery used by them in operation, while they retained the right, and had been prevented from alienating without the plaintiff’s consent, but after alienating be still responsible for tolls upon all the coffee cleaned by their vendees, by virtue of such process, thus destroying one of the principal benefits to be derived from a purchase of a right beyond that of a right of using the patent, to wit, a power to sell and dispose of it. Besides, the tolls, for whose non-payment the grant was to be forfeited, were payable at all events ; whether the defendants did or not earn an amount equal to them from others. An undertaking by them to keep the machines running, whatever the rate of compensation to them might be, merely to earn the plaintiff’s right to the prescribed tolls, would certainly be a piece of folly, of which they ought only to be convicted upon the most clear and express evidence of having entered into it.
Both parties assumed in this instrument, that the patent was likely to prove profitable, the. defendants paying a large *252 sum for the right, and the plaintiff claiming under it three times the amount, in addition, for a commutation of his right to the prescribed tolls.
According to the general scope of such instrument it contemplated the use of all the machinery which could be employed within the prescribed district in cleansing and renovating coffee by the plaintiff’s process, either by the defendants or their representatives or grantees, termed in such instrument “successors.”. But the phrase in the condition in question on which the plaintiff relies- to impose an obligation upon the defendants of working diligently with the machinery, by which his process was carried on, speaks of keeping in operation machinery “ contemplated ” by such instrument, and used by the defendacts “ or their successors.” The plaintiff, apparently aware how extravagant the claim would be, that the defendants should keep in motion for his benefit all the machinery which could be set in motion under such grant, according to the public demand, by themselves or their successors, limits his claim, in his complaint, to the more moderate standard of the machinery to which the cylinder belonged, which the plaintiff was to furnish, as part of such agreement, as being that which was designated and intended by the clause under consideration as “machinery contemplated” in such instrument, and which such complaint also states to be part of its consideration. If by the last be meant the consideration of the grant, it clearly was not, as the performance of the conditions was expressly declared to be, the only one. It may have been of the payment of the five thousand dollars, but that would neither give the plaintiff any additional rights, nor make such cylinder the machinery designated as “contemplated.” No great stress, therefore, in construing the clause in question, could properly be laid upon the supposition that the machinery “ contemplated ” was to be confined to that alone of which the plaintiff was to furnish a piece as part of the agreement. If there was a covenant at all entered into by the defendants, by virtue of such phrase, which such transfer of the patent right contemplated being used, upon *253 any rule of legal construction, it must have included all machinery capable of being used under it. Although the plaintiff shrinks from the enormity of claiming it, and sheltering himself behind the more modest demand of merely employing that machinery, for which he was to furnish a cylinder as part of the consideration for the money paid him, if his patent was really likely to be productive, he had secured the payment of his tolls by the forfeiture of the grant if they were not paid, and that condition attached in the hands of sub-grantees. It was much less extraordinary that the inventor of a process should have such confidence in its profitableness, as to trust to the sense of self interest of the purchaser of part of the right to use it, than that such purchaser should bind himself to work every machine used under it, simply for the plaintiff’s benefit.
It is a matter of considerable importance also to determine what was meant by contemplated machinery to meet the argument that the tolls earned formed part of the consideration of the grant, and therefore a covenant to pay them might be implied more easily, since no such implication could arise in regard to the payment of tolls merely on work done by one machine, one without regard to others.
But whatever may be the machinery so contemplated, I have been unable to find in the clause in question, or in any interpretation of it by the whole instrument, or in any implication arising from it, either alone or in connection with other facts creating relations, duties or obligations between the parties, any undertaking on the part of the defendants, to use due diligence in employing the plaintiff’s process, so as to enable him to recover the stipulated tolls. The phrase on which the latter relies is found only in a condition, which is itself but a qualification of some other right, and is introduced by the ex-ceptive particle “but.” It therefore can only be grammatically construed as a modification by antagonism or construction of the prior statement of the condition. The plaintiff provided by such condition expressly only against any prejudice to him by dissensions between the defendants or those who succeeded *254 to their rights, but did not claim by that to acquire any rights beyond those before reserved. He then aclded thereto, by way of defining the prejudice against which he was most anxious to guard in case of such dissensions, the not keeping in operation some machinery to earn his tolls for him. And the words “ notwithstanding such dissensions,” or some equivalent, must be understood as-added at the end by force of the exceptive word “but.” The provision against a prejudicial result from dissensions among the successors of the defendants, as well as their own, which includes their grantees, and yet wholly omitting to designate by whom in case of such succession, the machinery contemplated was to be kept in operation, shows that the object of the phrase following the word but was not to create a new stipulation, but to modify or enlarge a right given previously, and that was a right to the tolls, whether one or more of the defendants or of their successors used the plaintiff’s process. I do not perceive how, with any show of reason, it can be urged, therefore, that the provision for keeping machinery in operation may be considered as disconnected with the effect of dissensions among the grantees, so as to make it a mere new and absolute undertaking to work machines diligently for the plaintiff’s benefit. Such an interpretation would not only deprive the word “but” of all signification, and thereby destroy the grammatical construction of the sentence,-by separating one part from the other without a connecting link, but would foist an independent obligation into and graft it upon a mere qualification of rights previously granted without regard, to the purpose of such qualification. Such a mode of creating an obligation would be extremely singular in an instrument so precisely and formally drawn and one which is so careful to use the appropriate distinctive words, when speaking of grants, conditions, provisoes and covenants, as that before us.
But it is said that an implied covenant may be raised from a mere intention that a party should do a certain act manifested by words contained in an express covenant. There is no express covenant in the instrument before us, on the part *255 of the plaintiff, as to the patent. It was an executed transfer of the patent for the sum of five thousand dollars; defeasible on non-payment of a stipulated royalty. Cases of an executory agreement for the transfer of a right for certain considerations, signed by both parties, where an obligation to perform, pay or give the expressed consideration is implied, such as Barton v. McLean, (5 Hill, 256,) Richards v. Edick, (17 Barb. 260,) are not applicable to a conveyance upon condition, so as to make such conditions covenants, although they may to a certain extent be part of the inducement to the conveyance. Besides, in the class of cases referred to, the implication is made to arise from the use of the word “agreed” as importing not merely an undertaking but a mutual contract or consideration. (Andrews v. Ponte, 24. Wend. 285. Barton v. McLean, ubi supra.) I am not aware of any principle or authority for implying a covenant from a condition, whose office is merely to qualify a prior grant. The sanction expressly adopted for the performance of such condition consists of the loss of the thing granted, alone, and there is, therefore, no need of implying on the principle of “ nil frustra,” an obligation' to be enforced by action. (Palmer v. Fort Plain, &c. Plank Road Co., 11 N. Y. Rep. 376. Shield v. McNitt, 9 Paige, 101. Bagley v. Peddie, 16 N. Y. Rep. 469. Salisbury v. Philips, 10 John. 57. Gale v. Nixon, 6 Cowen, 445. Culver v. Sisson, 3 N. Y. Rep. 264. Livingston v. Stickles, 8 Paige, 398.)
I am unable to perceive any force in the words “keeping” and “hereinbefore mentioned” as implying a covenant. The former was most naturally used for expressing continuous action at any time, and the latter merely qualified “ available, productive and payable,” which referred to the tolls before mentioned for the use of the process. Nor have I been able to comprehend the argument claimed to be drawn from the provision as to commtitation of the tolls, which was confined to the defendants themselves, without mention of their successors. It was fully as natural to provide for a release of the grant of a patent anticipated as profitable from a burden, as a release of themselves from a covenant, and by the same means. Nor am *256 I shocked by the consideration that an inventor, confident in the success of his invention and knowing that other parties- so far relied upon it as to pay $5000 for its use within a limited district, should himself so far have relied for further compensation beyond the $5000 upon its success and their sense of self interest, particularly where provision was made for reimbursing such $5000 from the tolls to be paid to him alone.
Of course it will not be pretended that any covenant to use a thing can be implied from a covenant to pay a certain sum for its use, merely because such sum was the consideration for such use.
A very early case (Geery v. Reason, Cro. Charl. 128,) is very apposite on some of the points just discussed. There a lessee of certain rooms was held not liable for not collecting the rents of other rooms in the same building, although his lease was accompanied by a promise that he should collect such rents, and the rent of his own rooms was declared to be a compensation for his trouble in collecting them. And it was held on demurrer, without hearing the defendants, that the proviso was a mere condition and not a covenant, although such collection was the consideration for the use of the rooms leased to the defendant.-
But in fact, it is very difficult, if not impossible, to find in the instrument before us any consideration, express or implied, for the defendants as an equivalent for the duty of exerting themselves to procure business for the machinery in question and superintend its use,- in order to vest in the plaintiff the right to his tolls. Supposed profits to them are not sufficient, because they are bound to pay the tolls, if at all, whether there are profits or not, even to the extent of the sums to be paid to the plaintiff.
Being satisfied, therefore, that no covenant to work the machinery and use. the process in question for the benefit of the plaintiff is expressed in or can be implied from the whole of such instrument or any part thereof, or from the fact that realizing such benefits formed part of the inducement of the plaintiff, to make the grant of the patent therein contained, I *257 think the judgment should be reversed, with costs. And as the plaintiff’s claim rests wholly on a written instrument, which cannot be varied by parol evidence, and might have been disposed of on demurrer, or motion to dismiss .the complaint where leave to amend might be refused, the judgment of reversal should be absolute, without the award of a new trial, (a) (Code, § 330. Edmonston v. McLoud, 16 N. Y. Rep. 543.)

 Affirmed in the Court of Appeals, (36IV. Y. Sep. 288.)